# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW MEXICO

MICHAEL A. VIGIL,

    Plaintiff,

v.                                                                                                     Civ. No. 18-445 GJF

NANCY A. BERRYHILL, *Acting*
*Commissioner of the Social Security*
*Administration*,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court upon Plaintiff Michael Anthony Vigil's ("Plaintiff's") "Motion to Reverse or Remand Administrative Agency Decision" [ECF 18] ("Motion"). The Motion is fully briefed.[1] Having meticulously reviewed the entire record and the parties' briefing, the Court concludes that the Administrative Law Judge's ("ALJ's") ruling should be **AFFIRMED**. Therefore, and for the reasons articulated below, the Court will **DENY** the Motion.

## I. FACTUAL BACKGROUND

Plaintiff was born in 1982. Administrative Record ("AR") 198. He has an associate degree in electronic technology and has worked in a number of jobs, including sheet metal production, hand packaging, retail store management, and sales. AR 39, 59-60. Plaintiff stopped working in September 2014, and on January 12, 2015, he applied for social security disability benefits, claiming he suffered from a disability that began four days earlier. AR 198, 228; *see also* AR 120, 200, 207. He claimed that his disability resulted from five conditions: fibromyalgia, chronic pain, severe anxiety, depression, and post-traumatic stress disorder ("PTSD"). AR 228.

---

[1] *See* ECFs 19 (Brief Supporting Motion), 21 (Commissioner's Response). Plaintiff declined to file a reply, even though his filing deadline was extended by twenty days, from January 4, 2019, to January 24, 2019, due to the government shutdown, *see* ECFs 16, 22, and he has thereby "consent[ed] that briefing on the motion is complete." D.N.M.LR-Civ. 7.1(b).

In May 2015, the Social Security Administration (SSA) denied Plaintiff's claim, concluding that Plaintiff had the physical capacity to perform "medium" forms of work and the mental capacity for "unskilled" types of work. AR 73-76, 85-88. In August 2015, upon Plaintiff's request for reconsideration, the SSA again denied his claims and again concluded that Plaintiff was able to perform "medium" and "unskilled" work. AR 99-103, 112-116.

Plaintiff requested a hearing, which was held in January 2017 before ALJ Doug Gabbard II. AR 33. Assisted by counsel, Plaintiff testified at the hearing, as did Melissa Brassfield, a vocational expert. AR 33, 38, 58. In March 2017, "after careful consideration of all the evidence," the ALJ concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act. AR 17.[2]

Plaintiff sought relief with the SSA's Appeals Council. AR 197. In March 2018, the Appeals Council found, among other things, no abuse of discretion by the ALJ, no error of law, and no lack of substantial evidence. AR 4. It therefore denied Plaintiff's request to review the ALJ's decision and affirmed that decision as the Commissioner's final decision. *Id.* Plaintiff timely petitioned this Court for relief in May 2018, alleging he was "severely and irreparably disabled by multiple impairments" and that the ALJ's decision "lack[ed] substantial support in the evidence." Pl.'s Compl. 1-2, ECF 1.

## II. PLAINTIFF'S CLAIMS

Plaintiff's fundamental claim is that the ALJ erred in concluding that Plaintiff, despite his impairments and alleged symptoms, nevertheless had the "residual functional capacity" ("RFC") to work—specifically to "perform a range of medium work" that was "unskilled" in nature. Pl.'s Br. 11-15; AR 22. Plaintiff first argues that the ALJ did not support this RFC finding with

---

[2] A more in-depth discussion of the ALJ's decision appears in Section IV, *infra*.

"substantial evidence" because he failed to "properly account" for (a) Plaintiff's asserted psychological limitations and (b) Plaintiff's psychological treatment. Pl.'s Br. 11-14. Plaintiff also contends that the ALJ erred in his RFC finding because he wrongly gave "little weight" to the opinion of a certified nurse practitioner who managed Plaintiff's medication. *Id.* at 14-15.

## III. APPLICABLE LAW

### A. Standard of Review

When the Appeals Council denies a claimant's request for review, the ALJ's decision becomes the final decision of the agency.[3] The Court's review of that final agency decision is both legal and factual. *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence." (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992))).

In determining whether the correct legal standards were applied, the Court reviews "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). The Court may reverse and remand if the ALJ failed to "apply correct legal standards" or "show . . . [he or she] has done so." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996)).

The Commissioner's findings "as to any fact, if supported by substantial evidence, *shall* be conclusive." 42 U.S.C. § 405(g) (emphasis added). "Under the substantial-evidence standard, a

---

[3] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981; *see O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994). For the sake of brevity, the Court includes only the C.F.R. citations to part 404 (disability insurance claims) and not the parallel citations to part 416 (supplemental security income claims).

court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (brackets in original) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "And . . . the threshold for such evidentiary sufficiency is not high. Substantial evidence, [the Supreme] Court has said, is more than a mere scintilla." *Id.* (internal quotation marks and citation omitted). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

Under this standard, a court should still meticulously review the entire record, but it may not "reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (quoting *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004)); *Hamlin*, 365 F.3d at 1214. Indeed, a court is to "review only the *sufficiency* of the evidence, not its weight." *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). Therefore, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). Consequently, a court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200) (brackets omitted).

Ultimately, if the correct legal standards were applied and substantial evidence supports the ALJ's findings, the Commissioner's decision stands and Plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin*, 365 F.3d at 1214.

**B. Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable to "engage in *any* substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added).

The SSA has devised a five-step sequential evaluation process to determine disability. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003). The claimant bears the burden of proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); *Williams v. Bowen*, 844 F.2d 748, 750-51, 751 n.2 (10th Cir. 1988). In the first four steps, the claimant must show (1) that "he is not presently engaged in substantial gainful activity," (2) that "he has a medically severe impairment or combination of impairments," and either (3) that the impairment is equivalent to a listed impairment[4] or (4) that "the impairment or combination of impairments prevents him from performing his past work." *Williams*, 844 F.2d at 750-51; *Grogan*, 399 F.3d at 1261.

If the claimant has advanced through step four, the burden of proof then shifts to the Commissioner to show that the claimant retains sufficient RFC "to perform other work in the national economy in view of his age, education, and work experience." *Yuckert*, 482 U.S. at 142, 146, n.5.

---

[4] If the claimant can show that he has a listed impairment, he will be found to be disabled and no further steps will be analyzed. 20 C.F.R. § 404.1520(a)(4)(i-iv). Otherwise, if no listed impairment can be shown, the analysis moves on to step four. *Id*.

## IV. ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

In his March 2017 written decision, the ALJ affirmed that he carefully considered the evidence and the "entire record" before him. AR 19, 22, 25, 29. In his "Findings of Fact and Conclusions of Law," the ALJ discussed the evidence and opinions that led to his decision. AR 19-25.

### A. Steps One through Three

At step one, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since January 8, 2015, the alleged onset date of his disability. AR 19. At step two, the ALJ found that Plaintiff had the following "severe" impairments: "fibromyalgia/chronic pain; mild thoracic spine degenerative disc disease; affective disorder; anxiety disorder; and a history of substance addiction disorders." *Id.* The ALJ classified these impairments as "severe" because they "ha[d] more than a minimal effect on [Plaintiff's] ability to perform basic work related activities." *Id.* The ALJ also considered Plaintiff's other impairments[5] but found them to be non-severe as they did not have "more than a minimal effect" on his ability to work. AR 19-20.

At step three, the ALJ found that no impairment or combination thereof satisfied the criteria of a listed impairment. AR 20-22. In determining whether any of Plaintiff's mental impairments qualified as a listed impairment, the ALJ rated Plaintiff's mental limitations in four "broad areas of functioning." AR 20-21. Because the ALJ only rated Plaintiff as having "mild limitations" in one category[6] and "moderate limitations" in three categories,[7] the ALJ found that the applicable

---

[5] These other impairments consisted of "chest pain, IBS [irritable bowel syndrome], elevated liver enzymes, diaphragmatic-hiatal hernia, leukocytosis, esophagitis, possible early onset shingles, and occasional GERD [gastroesophageal reflux disease] symptoms." AR 20.

[6] This category was "adapting or managing oneself." AR 21.

[7] These three categories were "[1] understanding, remembering, or applying information; [2] interacting with others; [and] [3] concentrating, persisting, or maintaining pace." AR 21.

criteria[8] for a listed mental impairment were not satisfied. AR 21. In finding that Plaintiff had only "moderate limitations" in the specific category of "concentrating, persisting, or maintaining pace," the ALJ relied not only on the medical records but also on the information Plaintiff voluntarily provided in a "Function Report" worksheet:

> [Plaintiff] has moderate limitations in concentrating, persisting, or maintaining pace. [Plaintiff] reported difficulty following spoken instructions and asserted that fogginess interferes with his ability to maintain attention [citing "Function Report – Adult" at AR 248]. Moderating these difficulties, [Plaintiff] remains able to pay attention for up to an hour [citing *Id.*]. He can watch movies, play video games, and handle money [citing *Id.* at AR 246-47]. Throughout the medical record, [Plaintiff] was described as alert and cooperative with logical and linear thought processes [citing medical exhibits at AR 470, 741, 743, 752, 762].

AR 21. The ALJ explicitly stated that these limitation ratings were "not a [RFC] assessment but [were] used to rate the severity of mental impairments at steps [two] and [three]." AR 22. The ALJ further stated that "[t]he mental [RFC] assessment used at steps [four] and [five] . . . requires a more detailed assessment" and would "reflect[] the degree of limitation the [ALJ] has found." *Id*.

### B. Residual Functional Capacity

Before performing the step four analysis, in which the ALJ considers whether a claimant can perform past work, the ALJ must first determine the claimant's RFC.[9] Here, the ALJ found that Plaintiff had the physical RFC to perform "a range of medium work"[10] and the mental RFC to

---

[8] To qualify as a listed impairment, at least two limitations must have been rated as "marked" limitations or at least one limitation must have been rated as an "extreme" limitation. AR 20-21 (citing 20 C.F.R., Subpt. P, App. 1, §§ 12.04(b), 12.06(b)).

[9] *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity."); *but cf. Winfrey v. Chater*, 92 F.3d 1017, 1023 (describing the RFC determination as technically the first part of step four).

[10] The ALJ specifically found that Plaintiff had the RFC "to perform a range of medium work as defined in [the applicable regulations]. He can perform unlimited climbing of ramps and stairs and frequent climbing of ladders, ropes, or scaffolds. He can do unlimited balancing and frequent stooping, kneeling, crouching and crawling." AR 22.

perform "unskilled work."[11] In making these findings, the ALJ affirmed that, in addition to considering the opinion evidence, he also considered "all symptoms and the extent to which [Plaintiff's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." AR 22.

In support of these RFC findings, the ALJ found that Plaintiff's "medically determinable impairments" could have caused his alleged symptoms. AR 25. The ALJ explained, however, that Plaintiff's "statements concerning the *intensity, persistence and limiting effects* of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." *Id.* (emphasis added). As described below, the ALJ discussed the evidence and reasoning that led to his RFC findings.

### 1. *Plaintiff's Physical RFC*

The ALJ found that although Plaintiff alleged having "extremely painful and disabling limitations," the evidence simply did not support such allegations. AR 22-25. The ALJ began by reviewing the allegations of Plaintiff—who had a history of abusing drugs, including pain medication[12]—that his pain, which was "primarily in his back," made his back feel "as if it [were] on fire" and "in a vice." AR 22. The ALJ also reviewed Plaintiff's allegations that this pain was

---

[11] The ALJ specifically found that Plaintiff had the RFC to perform "unskilled work, which is simple, repetitive and routine; his supervision must be simple, direct, concrete, and uncritical. He will do best in a work setting where he can occasionally work alone and interpersonal contact with supervisors and coworkers must be incidental to the work performed, e.g. assembly work. Further, he must not be required to work at fast-paced production line speeds, he must have normal, regular work-breaks, and he should have only occasional contact with the general public." AR 22.

[12] The ALJ found that Plaintiff had undermined his allegations because he did not comply with the medical directives for his prescription medications. AR 25. For example, the ALJ observed that Plaintiff often "double-dosed his medication," "self-medicated with cocaine," "substituted psychotropic medication for pain relievers," and "[drank] alcohol, despite contraindications for his psychotropic medication and medical marijuana." *Id.* (citing AR 472 (initially denying any use of cocaine), 362 (admitting to taking cocaine after running out of his pain medication), 388 (substituting Xanax for pain medication), 457 (noting his "paid doctor fired him" because of his cocaine use), 469 (admitting to buying Oxycodone from the street and taking cocaine two weeks previously), 622 (stating the "he was on Morphine for about 4 years"), 758 (noting Plaintiff's "history of drug abuse" and that "he [was] not interested in any other modality of treatment besides pain medication")); s*ee also* AR 741 (Plaintiff's CNP noting he had a "history of opioid dependence").

8

constant, that neither medical treatment nor medications could mitigate it, and that it limited his ability to "lift, stand, walk, sit, bend, stoop, squat, kneel, and climb." *Id.*

The ALJ nevertheless found that the objective medical and other evidence did not support these allegations. AR 24. For example, the ALJ observed that a "computed tomography (CT) imaging of [Plaintiff's] thoracic spine proved 'largely unremarkable' . . . and CT imaging of [his] lumbar spine also proved objectively 'normal.'" AR 24 (quoting AR 487, 489) (citing AR 547, 550). Furthermore, the ALJ observed that "a 'whole body bone scan' also resulted [in] 'normal' findings." *Id.* (quoting AR 552). In addition, the ALJ found that Plaintiff received only "minimal" and "overwhelmingly conservative" treatments—e.g., acupuncture and physical therapy—for his reported pain and resulting limitations. *Id.* (citing AR 507, 517, 581, 596, 606, 673). The ALJ found that such treatments, which included periodic medication adjustments, were "reasonably effective in controlling his pain" and preserved Plaintiff's ability to "perform physical work activities on a regular and sustained basis." *Id.* (citing AR 362, 585, 739, 754). Finally, the ALJ found that Plaintiff's disability examination—which revealed that Plaintiff had significant "strength, mobility, and overall functionality"—was consistent with Plaintiff performing medium work. *Id.* (citing AR 460-61).

Consequently, the ALJ found that this evidence was simply "not indicative of the painful and disabling limitations [Plaintiff] allege[d]" and that Plaintiff had the physical RFC to perform "a range of medium work." AR 22, 24.

2. *Plaintiff's Mental RFC*

The ALJ found that Plaintiff's alleged psychological impairments and symptoms were also not supported by the evidence. AR 23. The ALJ began by reviewing Plaintiff's allegations of anxiety, PTSD, and depression, which Plaintiff claimed caused problems with his "memory,

9

concentration, comprehension, ability to follow instructions, and stay on task." *Id.* He also reviewed Plaintiff's allegation that he had "chronic brain fog"[13] and that it prevented him from "effectively completing tasks and sustaining employment." *Id.* (citing AR 459).

After reviewing Plaintiff's allegations, the ALJ found that "there [was] a general lack of treatment and or counseling, as it relates to the reported depression, anxiety, or PTSD." *Id.* The ALJ observed that although Plaintiff "report[ed] significant psychological limitations," he neither sought nor received the "respective mental health treatment." *Id.* (citing AR 427-57, 462-73). The ALJ also found that these alleged limitations were inconsistent with the treatment record, Plaintiff's medication management, and the "lack of or infrequency of clinical therapeutic treatment" for his alleged disabling symptoms. *Id.* Consequently, the ALJ gave "little weight" to the opinion of CNP Deborah Deetz who treated Plaintiff and who cursorily opined that Plaintiff would miss more than four days of work per month. *Id.* (citing AR 479).[14] Instead, the ALJ gave "greater weight" to the opinions of two state agency psychological consultants, J. McWilliams, Ph.D., and Aroon Suansilppongse, M.D., who reviewed the record and opined that Plaintiff could "perform unskilled tasks." *Id.* (citing AR 66-77, 92-104).

The ALJ also reviewed the "available and reported mental status examinations" in the medical records and observed that they demonstrated Plaintiff was "cognizant, functional, and generally of a capacity and state of mind wherein he can reasonably be expected to perform simple

---

[13] Although the ALJ observed that Plaintiff "smoke[d] a lot of marijuana," AR 25 (quoting AR 782) (citing AR 463, 768), and abused drugs, including cocaine and prescription pain medication, *see supra* note 12, no correlation or causation was definitely established between Plaintiff's use—and misuse—of various mind-altering substances and Plaintiff's "chronic brain fog." *See* AR 23, 25, 333-782.

[14] CNP Deetz, in answering a question on a "Medical Source Statement" worksheet (i.e., "On the average, how often do you anticipate that your patient's impairments or treatment would cause your patient to be absent from work?), marked a box that stated "[m]ore than 4 days per month." AR 479. But she provided no explanation as to why exactly Plaintiff's impairments or treatment would have made him miss so much work. *Id.; see also* AR 475-79 (CNP Deetz declining to answer much of the worksheet and instead writing "I do not evaluate work related activities").

10

and learned tasks in appropriate vocational settings." *Id.* Although Plaintiff's mood was anxious and sometimes depressed, "he [was] generally found to be alert and cooperative with logical and linear thoughts, an intact memory, fair judgment and insight, and to be free of hallucinations and or delusions." *Id.* (citing AR 470, 741, 743, 752, 762). Furthermore, the ALJ found that although Plaintiff "[did] not regularly see a counselor or psychologist," he nevertheless avidly pursued and followed a "psychotropic medication regimen." *Id.* The ALJ further found that such psychological treatment options were "relatively successful in restoring and maintaining [Plaintiff's] baseline functional status such that he can perform simple unskilled work." *Id.*[15]

Consequently, based on the above evidence and findings, the ALJ found that Plaintiff could perform "simple, routine, and repetitive tasks in appropriate vocational settings." AR 23.

### C. Steps Four and Five

At step four, given the RFC described above, the ALJ found that Plaintiff was unable to perform his past relevant work. AR 25. At step five, however, the ALJ found that Plaintiff was able to successfully adjust "to other work that exists in significant numbers in the national economy," including as a "laundry worker" or an "industrial sweeper/cleaner." AR 26. Consequently, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act." *Id.*

## V. ANALYSIS

### A. Substantial Evidence Supported the ALJ's RFC Finding

Plaintiff first argues that the ALJ's RFC findings are not supported by substantial evidence because the ALJ did not "properly account" for either (1) Plaintiff's asserted psychological

---

[15] The ALJ also observed that Plaintiff's "cognitive and psychological functioning improves with said psychotropic medication and deteriorates when he runs out of his medication" and that, according to Plaintiff, "the marijuana helps significantly with his alleged PTSD." *Id.* (citing 388-89, 459, 472, 483, 538, 739, 747, 749, 770, 782).

11

limitations or (2) Plaintiff's psychological treatment. Pl.'s Br. 11-14.[16] As explained below, this Court rejects these arguments and holds that substantial evidence supports the ALJ's RFC findings.

*1. The ALJ Did Not Err in Considering Plaintiff's Psychological Limitations*

Plaintiff asserts that there was an inconsistency between the ALJ's acknowledgment, at step three, of an alleged psychological limitation (i.e., Plaintiff's statement that he can "pay attention for up to an hour") and the ALJs ultimate RFC finding, at step four, that Plaintiff nevertheless had the mental capacity to perform unskilled work. *Id.* at 12. Thus, Plaintiff argues, the ALJ could not have "properly account[ed]" for this alleged limitation, thereby causing insufficient evidence to support the ALJ's RFC findings. *Id.*

As an initial matter, the Court discerns no inconsistency between the ALJ's acknowledgment of Plaintiff's alleged short attention span and the finding that Plaintiff could work. Although Plaintiff characterizes this acknowledgment as a factual finding—particularly one relating to Plaintiff's RFC—the ALJ made no such finding. *See id.*; AR 21. Instead, as is apparent from the ALJ's decision, he merely *acknowledged* Plaintiff's own *assertion* of a limitation. *Id.* Although the ALJ wrote that "[Plaintiff] remains able to pay attention for up to an hour," the ALJ was explicitly citing Plaintiff's own written statement. *Id.* (citing AR 248 (Plaintiff, on his "Function Report" worksheet, responding to the question "For how long can you pay attention?" with the answer "up to an hour")). Furthermore, the purpose of the ALJ's comment was not to establish the truth or falsity of Plaintiff's attention span statement, but rather to show that—by Plaintiff's own admission—his asserted "difficulties" in maintaining attention and following spoken instructions were "moderated," i.e., not as limiting as one might initially think. *See id.*

---

[16] Plaintiff, however, cites no legal authority that would have somehow required the ALJ to "account" for this evidence any differently. *Id.* at 11-14; *see also* D.N.M. LR-Civ. 7.3(a) (requiring a motion to "cite authority in support of the legal positions advanced").

(ALJ writing that "[Plaintiff] reported" such difficulties, citing AR 248, but that his ability to "pay attention for up to an hour" moderated these difficulties, again citing AR 248).[17]

What is more, the ALJ explicitly stated that—at step three—he was *not* assessing Plaintiff's mental RFC. AR 22. Instead, the ALJ affirmed that he was merely "rat[ing] the severity of mental impairments" to determine if they qualified as "listed impairments" and that the more detailed "mental [RFC] assessment used at steps [four] and [five]" would "reflect[] the degree of limitation the [ALJ] ha[d] found." *Id.* Thus, the ALJ's reference at step three to Plaintiff's alleged short attention span was not a factual finding regarding Plaintiff's mental capacity, but rather an acknowledgment of Plaintiff's own assertion, which was used to support the ALJ's listed impairment analysis. Consequently, there is simply no factual inconsistency between this acknowledgment and the ALJ's later RFC finding that Plaintiff had the mental capacity to work.[18]

Although Plaintiff's "inconsistency" assertion was factually incorrect, that assertion was used to support Plaintiff's larger argument that the ALJ's mental RFC finding was not supported

---

[17] That the ALJ is not making a factual finding on the truth of Plaintiff's statement becomes even more clear when reading the entire listed impairment analysis—which relies primarily on Plaintiff's own written responses from his "Function Report" worksheet. *See* AR 21. In this analysis, the ALJ includes twelve separate statements that each have their own citation to one of these written responses by Plaintiff. *Id.* And approximately seven of the ALJ's statements, as with the statement at issue here, are not explicitly qualified by phrases such as "Plaintiff asserted," "Plaintiff stated," or "Plaintiff reported." *See id.* Nevertheless, the ALJ is not thereby making factual findings, but rather citing to Plaintiff's responses in showing that—even accounting for Plaintiff's own assertions about his psychological limitations—these limitations are still not severe enough to support a listed impairment classification. *See id.*

[18] Even if—despite the ALJ's explicit disclaimer and reasoned analysis at step three—the ALJ's acknowledgment of Plaintiff's allegation of a short attention span were instead viewed as a definitive factual finding regarding Plaintiff's mental capacity, it is still by no means certain that Plaintiff's "inconsistency" argument would prevail. For example, the Commissioner cites some authority for the proposition that "*unskilled* work . . . does not require the ability to maintain attention and concentration for extended periods." Def.'s Resp. 11, ECF 21 (emphasis added) (citing Social Security Ruling, SSR 96–9p, 61 Fed. Reg. 34483 (1996); *Nelson v. Colvin*, 655 F. App'x 626, 629 (W .D. Okla. 2016) (unpublished); *Makovec v. Colvin*, No. 15-1223-SAC, 2016 WL 4382805, at *5 (D. Kans. Aug. 17, 2016) (unpublished)). Plaintiff, however, has cited no authority to support his implied assertion that unskilled work requires continuous concentration intervals exceeding one hour so that one can "stay on task between normal work breaks." *See* Pl.'s Br. 12 (citing AR 63 (vocational expert stating that excessive "off-task behavior" or "unscheduled breaks" would prevent someone from holding a job—but stating nothing about the amount or type of concentration that unskilled work requires for someone to be "on task")).

by substantial evidence. This larger argument, however, is also unfounded because substantial evidence did support the ALJ's mental RFC finding that Plaintiff could perform unskilled work. First, as observed by the ALJ, the medical records showed a "general lack of treatment" for Plaintiff's "reported depression, anxiety, or PTSD . . . . or report[ed] *significant* psychological limitations." AR 23 (citing AR 427-57, 462-73) (emphasis added). Second, two state agency psychological consultants opined that Plaintiff could "perform unskilled tasks." *Id.* Third, Plaintiff's mental examinations showed that he was "generally found to be alert and cooperative with logical and linear thoughts, an intact memory, fair judgment and insight, and to be free of hallucinations and or delusions." *Id.* (citing AR 470, 741, 743, 752, 762). Finally, the psychological treatment options that Plaintiff did pursue, specifically the "psychotropic medication regimen" and the use of medical marijuana, were "relatively successful in restoring and maintaining [Plaintiff's] baseline functional status such that he [could] perform simple unskilled work." *Id.* (citing AR 388-89, 459, 472, 483, 538, 739, 747, 749, 770, 782).

In sum, notwithstanding Plaintiff's factually incorrect "inconsistency" assertion, the ALJ's conclusion that Plaintiff had the mental RFC to perform unskilled work was supported by "more than a mere scintilla" of evidence—i.e., evidence that "a reasonable mind might accept as adequate." *Biestek*, 139 S. Ct. at 1154. Consequently, this Court holds that substantial evidence supported the ALJ's mental RFC finding that Plaintiff could perform unskilled work.

### 2. *The ALJ Did Not Err in Considering Plaintiff's Psychological Treatment*

Plaintiff also argues that insufficient evidence supported the ALJ's mental RFC findings because the ALJ incorrectly observed "a general lack of treatment and or counseling, as it relates to [Plaintiff's] reported depression, anxiety, or PTSD." Pl.'s Br. 13; AR 23. In support of this assertion, Plaintiff notes that he made over twenty visits to CNP Deetz during a twenty-two-month

14

period (August 29, 2014, to June 29, 2016), visited CNP Deetz's colleagues, and was prescribed several medications, including antidepressants, anxiety medication, and medical marijuana. Pl.'s Br. 13-14.

Contrary to Plaintiff's assertion, the ALJ correctly observed Plaintiff's lack of "clinical therapeutic treatment" relating to his alleged disabling psychological symptoms, and as discussed above, such evidence supported the ALJ's mental RFC findings. AR 23. Importantly, the ALJ did not state that Plaintiff lacked sufficient visits with CNP Deetz or psychotherapy appointments—but rather stated that Plaintiff had a "lack of . . . clinical therapeutic *treatment* . . . for the alleged *disabling* symptomology," e.g., Plaintiff's severe "chronic brain fog." *Id.* (emphasis added); *see also* AR 475 (CNP Deetz stating, on her "Medical Source Statement" opinion, that she saw Plaintiff for "medication management"), AR 388-96, 469-73, 754-82 (showing Plaintiff's treatment with CNP Deetz consisted primarily of medication education and management, along with some "*supportive* psychotherapy," such as "relaxation techniques and coping strategies for dealing with psychosocial stressor including deep breathing exercises" (emphasis added)). And this lack of treatment for disabling symptoms did not detract from—but rather supported—the ALJ's conclusion that Plaintiff had the mental capacity to work. Indeed, Plaintiff provides no explanation for how these monthly visits with a nurse practitioner—primarily for "medication management"—could have shown that he lacked the mental capacity to work. *See* Pl.'s Br. 13-14. Consequently, this Court again concludes that substantial evidence—including this lack of treatment and the other evidence discussed above—supported the ALJ's finding that Plaintiff had the mental RFC to perform unskilled work.

### 3. Plaintiff Did Not Adequately Present Additional Arguments

Plaintiff also *appears* to assert two additional—but not fully-formed—arguments, which this Court declines to explicitly review. First, Plaintiff appears to more broadly assert that the ALJ failed to "properly account" for Plaintiff's symptoms that arose from his mental health impairments. *Id.* at 12. Aside from referring to his alleged limited attention span, however, Plaintiff never identifies what—if any—other "symptoms" he could have been referring to. *Id.* And aside from later discussing his purported limited attention span (which is more of a "limitation" than a "symptom"), he provides no further discussion in support of his generalized assertion that the ALJ was required to "account" for certain—but unspecified—mental health symptoms in some other (again unspecified) manner. This Court therefore declines to guess at what Plaintiff might have specifically intended to further argue or to address potential—yet unidentified—arguments that could perhaps stem from such an assertion. *See, e.g.,* D.N.M. LR-Civ 7.1(a) (requiring a motion to "state *with particularity* the grounds and the relief sought" (emphasis added)); *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) ("perfunctory complaints failing to frame and develop an issue are not sufficient" (internal quotation marks omitted)); *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (only considering issues "that have been adequately briefed for [the court's] review"). Furthermore, such an analysis is also unnecessary because, as discussed above, the ALJ committed no legal error in making the mental RFC finding and that finding was supported by substantial evidence.

Second, Plaintiff also includes a short, unsupported assertion that the ALJ's RFC findings were "inconsistent with and unsupported by . . . [Plaintiff's] own testimony and what he told his treating medical sources about his pain, fatigue and other symptoms." *Id.* at 12. But not only does Plaintiff fail to cite any law that would, for example, require an ALJ's findings to be consistent

with a claimant's testimony or other statements, Plaintiff also utterly fails to elaborate on this assertion. *Id.* For example, he points to no specific statements, whether given through testimony or to medical providers, that would support this assertion, and he similarly fails to identify any corresponding RFC findings. *Id.* Yet he complains of legal error due to an inconsistency between these two relatively broad areas—areas that, in any event, are not required to be consistent. *See* 20 C.F.R. § 404.1529 (permitting an ALJ to reject a claimant's statements about his or her symptoms of limitations when such statements are not supported by the evidence). The Court will therefore not directly address all the possible—but unstated—arguments that could be associated with this vague and unsupported assertion. *See* D.N.M. LR-Civ 7.1(a); *Mays*, 739 F.3d at 576; *Keyes-Zachary*, 695 F.3d at 1161.

Nevertheless, in addressing the ALJ's finding that Plaintiff had the physical RFC to perform "a range of medium work," the Court holds that this finding was supported by substantial evidence—including Plaintiff's "normal" and "largely unremarkable" medical findings, Plaintiff's examination showing significant "strength, mobility, and overall functionality," and Plaintiff's "overwhelmingly conservative" treatments that were "reasonably effective in controlling his pain"—and that the ALJ applied the correct legal standards in reaching such a finding. AR 24.

## B. ALJ Did Not Err in Weighing the Opinion of CNP Deetz

Plaintiff argues that the ALJ erred in his RFC finding because he gave "little weight" to the opinion of CNP Deetz that Plaintiff would miss four days of work per month due to his mental health symptoms. Pl.'s Br. 14-15. Specifically, he asserts—again without citing any authority—that the ALJ erroneously gave her opinion "little weight" because (1) the ALJ did not discuss the length and nature of his treating relationship with her or "other relevant factors for weighing

opinion evidence," and (2) Plaintiff had a long and consistent treatment relationship with her. *Id.* As explained below, this Court disagrees.

*1. Controlling Legal Standard*

The ALJ must *consider* the following six factors when deciding what weight to give to the opinion of a medical source who does not qualify as an "acceptable medical source[]," such as a nurse practitioner: (1) the examining relationship between the medical source and the claimant, (2) the treatment relationship, including its length, nature, and extent as well as the frequency of examination, (3) the degree to which the medical source presents and explains evidence to support a medical opinion, (4) the consistency of the opinion with the record as a whole, (5) whether the opinion is from a specialist and is about an issue related to the medical source's specialty, and (6) other factors that are brought to the ALJ's attention. 20 C.F.R. §§ 404.1527(c)(1)-(6), 404.1527(f)(1), 404.1502(a). The regulation explicitly notes, however, that "not every factor for weighing opinion evidence will apply in every case because the evaluation of an opinion from a medical source who is not an acceptable medical source . . . depends on the particular facts in each case." 20 C.F.R. § 404.1527(f)(1).

The Tenth Circuit has held that the ALJ is not required to "explicitly discuss" all of the above six factors. *Oldham*, 509 F.3d at 1258 (finding no law "requiring an ALJ's decision to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion" (citations omitted)); *see also Wall v. Astrue*, 561 F.3d 1048, 1067 (10th Cir. 2009) (clarifying that the "ALJ is not required to discuss 'every piece of evidence'" (quoting *Frantz v. Astrue*, 509 F.3d 1299, 1303 (10th Cir. 2007))). So long as the ALJ "provided good reasons in his decision for the weight he gave to the treating sources' opinions," then "[n]othing more [is] required." *Oldham*, 509 F.3d at 1258 (citation omitted); *see also* 20 C.F.R. § 404.1527(c)(2) (requiring the ALJ to

18

"give good reasons" for the weight given to such opinions); *Mounts v. Astrue*, 479 Fed. Appx. 860, 865-66 (10th Cir. 2012) (unpublished) (applying this same principle those who are "not an acceptable medical source[s]").

  *2. Analysis*

The ALJ properly assigned "little weight" to CNP Deetz's opinion. First, while Plaintiff is correct that the ALJ did not explicitly discuss every applicable factor listed above, such as Plaintiff's treatment relationship with CNP Deetz, the ALJ was not required to "explicitly discuss" these factors. *Oldham*, 509 F.3d at 1258. Furthermore, the ALJ provided good reasons for the "little weight" he gave to CNP Deetz's opinion—specifically Plaintiff's lack of treatment for his "alleged disabling symptomology," Plaintiff's lack of "psychological limitations . . . represented in the treatment record," and the inconsistency between Plaintiff's "medication management . . . [and] the disabling limitations he alleges." AR 23. Consequently, "[n]othing more was required." *Oldham*, 509 F.3d at 1258.

Second, because this Court cannot "reweigh the evidence [or] substitute [its] judgment for that of the [ALJ]," *Newbold*, 718 F.3d at 1262, it must also reject Plaintiff's implicit assertion that the ALJ was required to give more weight to CNP Deetz's opinion. Therefore, this Court holds that the ALJ did not error in assigning "little weight" to CNP Deetz's opinion.

## VI. CONCLUSION

For the foregoing reasons, the Court holds that the ALJ applied the correct legal standards and that his findings and decision were supported by substantial evidence.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion is **DENIED**.

**IT IS FURTHER ORDERED** that the Commissioner's final decision is **AFFIRMED** and that the instant cause is **DISMISSED WITH PREJUDICE**.

19

**SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*

20